**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **NEWPORT AERONAUTICAL SALES,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-1283 (GK) |
| **DEPARTMENT OF THE AIR FORCE,** | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff, Newport Aeronautical Sales ("Newport"), brings this action against Defendant Department of the Air Force (the "Air Force") seeking production of agency records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and 10 U.S.C. § 130, as well as a declaratory judgment that an Air Force regulation, Air Force Instruction ("AFI") 61-204, is unlawful.

This matter is before the Court on Defendant's Partial Motion to Dismiss the non-FOIA counts pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Counts II, III, IV, and V). [**Dkt. No. 23**]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Partial Motion to Dismiss is **granted**.

**I.   BACKGROUND**

   **A.   Facts**[1]

Newport is a commercial data library that provides technical data to qualified defense contractors on an overnight basis. Contractors use this information in turn to bid for Department of Defense contracts. Newport obtains the information from the Department of Defense through FOIA requests and requests under Department of Defense Directive No. 5230.25, 32 C.F.R. § 250.1 et seq.[2] Defense Directive 5230.25, issued pursuant to 10 U.S.C. § 130, establishes policy and procedures for both the dissemination and withholding of certain unclassified technical data with military application. The Air Force has also issued, pursuant to Defense Directive 5230.25, its own interpretive guidance, namely AFI 61-204,[3] for Air Force personnel in marking and disseminating technical data.

Newport alleges in its Amended Complaint that, beginning in July 2001, the Oklahoma City Air Logistics Center ("OC-ALC") and

---

[1] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from Plaintiff's Amended Complaint.

[2] Defense Directive 5230.25 is available online at http://www.dtic.mil/whs/directives/corres/pdf/523025p.pdf.

[3] AFI 61-204 is available online at http://www.e-publishing.af.mil/pubfiles/af/61/afi61-204/afi61-204.pdf.

other Air Force components began to deny Newport's Defense Directive 5230.25 requests. Am. Compl. ¶ 26. OC-ALC rejected the requests because Newport did not provide a solicitation or contract number. Id. Newport alleges that it subsequently submitted a number of FOIA requests to OC-ALC, which later denied the vast majority of them after the original Complaint was filed in this case.

### B. Procedural History

Newport filed its original Complaint on July 31, 2004. In January 2005, after the Air Force had filed its Answer, Newport moved for leave to file an Amended Complaint. [Dkt. No. 14]. The Air Force opposed the motion, arguing that amending the Complaint would be futile because the non-FOIA counts in the proposed Amended Complaint could not withstand a motion to dismiss due to Newport's lack of standing. [Dkt. No. 15]. Without addressing the merits of the Air Force's argument, the Court granted Newport's motion for leave to file the Amended Complaint on February 11, 2005. [Dkt. No. 18]. The Court stated that "Defendant will have the opportunity to fully litigate the defenses it attempted to raise in its Opposition to the pending Motion." Id. at 1 n.1.

The Amended Complaint contains five counts:

- Count I seeks the production of agency records under FOIA;

- Count II alleges that agency records were improperly withheld under 10 U.S.C. § 130 as implemented by Defense Directive 5230.25;

- Count III alleges that the Air Force improperly promulgated AFI 61-204 without notice and comment rulemaking and seeks a declaratory judgment that AFI 61-204 is contrary to law;

- Count IV alleges that the Air Force promulgated AFI 61-204 without preparing a Small Business Impact Statement as required by the Regulatory Flexibility Act, 5 U.S.C. §§ 603-604, and also seeks a declaratory judgment that AFI 61-204 is contrary to law;

- Finally, Count V seeks a declaratory judgment that AFI 61-204 is inconsistent with FOIA and 10 U.S.C. § 130 as implemented by Defense Directive 5230.25.

The Air Force's Partial Motion to Dismiss seeks dismissal of Counts II through V.

**II.   STANDARD OF REVIEW**

    **A.   Rule 12(b)(1)**

To prevail on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff must establish that the court has subject matter jurisdiction to hear the case. In re Swine Flu Immunization Prods. Liab. Litig., 880 F.2d 1439, 1442-43 (D.C. Cir. 1989); Jones v. Exec. Office of the

President, 167 F. Supp. 2d 10, 13 (D.D.C. 2001). While the Court must accept as true all factual allegations contained in the complaint, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), "plaintiff's factual allegations in the complaint...will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim," because the plaintiff has the burden of proof to establish jurisdiction. Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal quotation marks omitted). In making its determination regarding the existence of subject matter jurisdiction, the court may consider matters outside the pleadings. Lipsman v. Sec'y of the Army, 257 F. Supp. 2d 3, 6 (D.D.C. 2003).

**B.   Rule 12(b)(6)**

"A motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted." Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985) (internal citations omitted). As stated above, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. Shear, 606 F.2d at 1253.

**III. ANALYSIS**

As an initial matter, Newport argues, without citing any

5

authority, that the Air Force is estopped by the Court's February 11, 2005 Order from re-raising the arguments it puts forth in its Motion to Dismiss. This argument is both frivolous and disingenuous. The Court was perfectly clear that the Air Force would be provided an "opportunity to fully litigate the defenses it attempted to raise" in its Opposition to Plaintiff's Motion to Amend the Complaint and that in granting the Motion to Amend it was not ruling on the merits of Defendant's argument. Feb. 11, 2005 Order at 1, n.1 [Dkt. No. 18]. The Air Force is not precluded from again raising these arguments in its Motion to Dismiss.[4]

### A. The Court Lacks Subject Matter Jurisdiction over Counts II, III, and V

The Air Force argues that the Court lacks subject matter jurisdiction because there is no statutory basis for the private rights of action Plaintiff asserts in Counts II, III, and V. In response, Newport claims to rely on 10 U.S.C. § 130 and FOIA for providing the statutory basis for its claims. See Pl.'s Opp'n at 11 n.4.

In 10 U.S.C. § 130(a) the Secretary of Defense is given authority to "withhold from public disclosure any technical data

---

[4] Newport also argues that the Air Force acted in bad faith by suspending Newport's status as a qualified United States contractor in an attempt to prevent Newport from litigating its claims in Counts II through V of the Amended Complaint in this Court. Newport was later reinstated as a qualified contractor. This argument is irrelevant to ruling on the Air Force's Partial Motion to Dismiss.

with military or space application" if the data may not be lawfully exported without approval under the Export Administration Act of 1979, 50 U.S.C. app. §§ 2401 et seq., or the Arms Export Control Act, 22 U.S.C. §§ 2751 et seq. The purpose of the statute is to authorize the withholding of unclassified technical data that could implicate national security concerns, so as to fall within Exemption 3 of FOIA. Colonial Trading Corp. v. Dep't of the Navy, 735 F. Supp. 429, 431 (D.D.C. 1990).

"[P]rivate rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). The creation of private causes of action in the absence of an express legislative statement is disfavored. Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1033 (D.C. Cir. 2004); see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 67 n.3 (2001) ("we have retreated from our previous willingness to imply a cause of action where Congress has not provided one.").

There is no question that Section 130 does not explicitly provide a private right of action to enforce its provisions. The touchstone for determining whether Section 130 creates an implied cause of action is Congressional intent. In the absence of Congressional intent to create a private right, the "cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Alexander, 532 U.S. at 286-87.

The legislative history of Section 130 indicates that Congress intended to provide for the withholding of certain types of unclassified military technical data. Colonial Trading Corp., 735 F. Supp. at 431.  The Report of the Senate Armed Services Committee regarding the legislation that included Section 130 notes the Committee's concern that technical data could be passed to "foreign countries and foreign competitors under the Freedom of Information Act."  S. Rep. No. 98-174, at 260 (1983), reprinted in 1983 U.S.C.C.A.N. 1081, 1150.  Once sent outside the United States, it would be impossible to prevent redissemination of the technical data. Id.

The Report gives no indication that the Committee intended Section 130 to create a private right or remedy.  Instead, the Committee's purpose was to prohibit the release of military technical data that could prove harmful to the national security interests of the United States, even though it was unclassified and releasable under FOIA.  See id. at 1151 ("...the Committee's objective is to protect valuable technical data with military or space application.").

Given the legislative history of Section 130, and the reluctance of the federal courts to imply private rights of action in the face of Congressional silence, it cannot be said that Congress intended to create a private cause of action through its enactment of Section 130.  See also Verduzco v. Gen. Dynamics, 742

F. Supp. 559, 562 (S.D. Cal. 1990) (holding in dicta that Section 130 cannot form the basis of a private claim). Consequently, the Air Force is correct that Section 130 does not provide a statutory basis for Newport's claims in Counts II, III, and V.

Newport also states that it relies on FOIA as a statutory basis for its claims. FOIA provides for the release of agency documents in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). FOIA does not, however, provide a cause of action for challenging agency actions. See 5 U.S.C. 552(a)(4)(B) (courts have "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld...").

Count II claims that the Air Force improperly withheld documents under 10 U.S.C. § 130; it does not rely on FOIA as it does in Count I (which is not challenged in this Motion).[5] Count III seeks to challenge AFI 61-204 as improperly promulgated because of the failure to provide notice and comment rulemaking as required by the Administrative Procedure Act ("APA"). Count V seeks a

---

[5] The Amended Complaint makes no reference to FOIA in Count II. Newport claims that it relies on FOIA as a basis for Count II in a footnote in its Opposition. However, "a plaintiff may not amend his complaint through his opposition papers." Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 71 (D.D.C. 2007).

declaratory judgment that AFI 61-204 is inconsistent with FOIA and 10 U.S.C. § 130.  Neither Count III or Count V seek production of agency records.  FOIA is thus not a proper statutory basis for Counts III and V and is not cited as a basis for relief in Count II.  Consequently, Counts II, III, and V must be dismissed for lack of subject matter jurisdiction.

### B. **Newport Lacks Standing to Bring Count IV**

The Air Force argues that Newport lacks standing to bring a claim under the Regulatory Flexibility Act ("RFA") in Count IV because Newport is not a small business.  Although Newport does not allege that it is a small business in its Amended Complaint, it contends that it is and has submitted a sworn declaration by its President, George MacArthur Posey, III, in support of its position. [Dkt. No. 33].

In Count IV, Newport complains that the Air Force did not prepare a Small Business Impact Statement when promulgating AFI 61-204 as required by the RFA.  When a plaintiff alleges a violation of a procedural right provided by statute, our Court of Appeals applies a two factor test to determine if the plaintiff has standing. Ctr. for Law & Educ. v. Dep't of Educ., 396 F.3d 1152, 1157 (D.C. Cir. 2005).  First, the government must violate a procedural right designed to protect the plaintiff's "threatened concrete interest." Id.  Second, the violation must result in an

injury to that "concrete, particularized interest." Id. Newport cannot satisfy this test.

### 1. Newport Has Alleged a Violation of a Procedural Right Designed to Protect Its Concrete Interest

"Not all procedural-rights violations are sufficient for standing; a plaintiff must show that 'the procedures in question are <u>designed</u> to protect some threatened concrete interest <u>of</u> <u>his</u> that is the ultimate basis of his standing.'" Ctr. for Law & Educ., 396 F.3d at 1157 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 573 n.8 (1992) (emphasis added by Court of Appeals)).

The RFA requires an agency promulgating a final rule to prepare a regulatory flexibility analysis that describes, among other things, the steps taken by the agency to minimize economic impact on small businesses. United States Air Tour Ass'n v. FAA, 298 F.3d 997, 1010 (D.C. Cir. 2002). "This procedure is intended to evoke commentary from small businesses about the effect of the rule on their activities, and to require agencies to consider the effect of a regulation on those entities." Cement Kiln Recycling Coal. v. EPA, 255 F.3d 855, 868 (D.C. Cir. 2001).

The Air Force argues that Newport lacks standing because it is not a "small business" as defined by the RFA. The Small Business Administration has promulgated regulations that define the term "small business" under the RFA. See 13 C.F.R. §§ 121.101, 121.201. Although Newport does not allege in the Amended Complaint that it is a small business, it did submit a declaration by its

President claiming that Newport fell within the Small Business Administration's definition of that term. Whether Newport does or does not constitute a "small business" under the RFA need not be resolved, however, because Newport cannot demonstrate an injury to a concrete, particularized interest, as described below.

### 2. Newport Has Failed to Demonstrate an Injury to That Concrete, Particularized Interest

"[A] procedural-rights plaintiff must demonstrate standing by 'show[ing] not only that the defendant's acts omitted some procedural requirement, but also that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest.'" Ctr. for Law & Educ., 396 F.3d at 1159 (quoting Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 664-65 (D.C. Cir. 1996)).

As noted earlier, the procedures required by the RFA are designed to ensure that small businesses are given an opportunity to comment on proposed regulations so that an agency may attempt to limit the economic impact of the regulations on them. Cement Kiln Recycling Coal., 255 F.3d at 868.

However, Newport has failed to show how a failure by the Air Force to follow the procedures laid out in the RFA when it promulgated AFI 61-204 caused Newport a concrete, particularized injury. The Amended Complaint does not allege any injury to Newport based on its status as a small business or that any injury was caused by the Air Force's failure to comply with the RFA.

Newport does not contend that a regulatory flexibility analysis would have altered the substance of AFI 61-204 in any way.  Nor does Newport contend that it was unfairly excluded from the regulatory process leading up to the promulgation of AFI 61-204. "[A] prospective plaintiff must demonstrate that the defendant caused the particularized injury, and <u>not</u> <u>just</u> the alleged procedural violation.'"  <u>Ctr. for Law & Educ.</u>, 396 F.3d at 1159 (quoting <u>Fla. Audubon Soc'y</u>, 94 F.3d at 664) (emphasis added in <u>Ctr. for Law & Educ.</u>).

Because Newport has not demonstrated an injury to a "concrete, particularized interest" by the Air Force's alleged violation of its procedural rights under the RFA, it does not have standing to bring Count IV.

As Newport lacks standing to bring Count IV and because the Court lacks subject matter jurisdiction over Counts II, III, and V, the Court need not examine the Air Force's other arguments.

**IV. CONCLUSION**

For the foregoing reasons, the Air Force's Partial Motion to Dismiss [**Dkt. No. 23**] is **granted**.  Counts II, III, IV, and V are **dismissed.**  An order shall issue with this Memorandum Opinion.

July 11, 2007
/s/
Gladys Kessler
United States District Judge

**Copies to: Attorneys of record via ECF**