```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
NEWPORT AERONAUTICAL SALES,    )
                               )
          Plaintiff,           )
                               )
     v.                        )    Civil Action No. 04-1283 (GK)
                               )
DEPARTMENT OF THE AIR FORCE,   )
                               )
          Defendant.           )
_____)
```

## MEMORANDUM OPINION

Plaintiff in this Freedom of Information Act case is Newport Aeronautical Sales ("NAS"), a commercial data library that provides qualified military contractors, including small businesses, technical data received from U.S. military agencies on an overnight basis for the purposes of facilitating contract bids. The present matter is before the Court on the Defendant Department of the Air Force's Motion to Dismiss or, In the Alternative, for Summary Judgment ("Air Force Motion") [Dkt. No. 54] pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 56. In its Opposition [Dkt. No. 61], Plaintiff NAS cross-motioned for summary judgment pursuant to Rule 56.

Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, Defendant's Motion is **granted**, and Plaintiff's Motion is **denied**.

I.    BACKGROUND

For the last thirty years, NAS has submitted routine requests for technical data to the Air Force's Oklahoma City Air Logistics

Center (OC-ALC) in order to service its clients. These requests typically were submitted under Department of Defense Directive ("DoDD" or "Directive") 5230.25, which limits access to "critical" technical data with military or space application to "qualified U.S. contractors," and restricts the contractors' ability to further disseminate information once access is gained. In 2003, after the Air Force began to routinely delay or deny NAS's DoDD 5230.25 requests, NAS made a general request for 155 Technical Orders ("TOs") under the Freedom of Information Act. The Air Force formally denied NAS's FOIA request in October of 2004, after commencement of this suit.

### A. The Statutory and Regulatory Framework

Before discussing the procedural history of NAS's FOIA requests in more detail, an overview of the statutory and regulatory framework is in order. The Freedom of Information Act, 5 U.S.C. § 522, generally requires federal agencies to release records to the public. Section (b)(3), however, excludes matters that are "specifically exempted from disclosure by statute." 5 U.S.C. § 522(b)(3) (2008). The statute relied on by the Air Force in this case is 10 U.S.C. § 130, "Authority to Withhold From Public Disclosure Certain Technical Data." The statute exempts from disclosure "any technical data with military or space application . . . if such data may not be exported lawfully outside the United States without an approval, authorization, or license under the

Export Administration Act of 1979 (50 App. U.S.C. 2401-2420) or the Arms Export Control Act (22 U.S.C. 2751 et seq.)." The statute further provides for the promulgation of regulations by the Department of Defense addressing the release of such technical data to qualified United States contractors. 10 U.S.C. § 130(b) (2008).

The Department of Defense implemented § 130 through DoDD 5230.25, "Withholding of Unclassified Technical Data from Public Disclosure." 32 C.F.R. § 250 (2008). Paragraph 2.1 clarifies the Directive's narrow scope:

> [10 U.S.C. § 130] applies to all unclassified technical data with military or space application in the possession of, or under the control of, a DoD Component that may not be exported lawfully without an approval, authorization or license under E.O. 12470 . . . or the Arms Export Control Act . . . . However, *the application of this Directive is limited only to such technical data that disclose critical technology with military or space application*. *The release of other technical data shall be accomplished in accordance with DoD Instruction 5200.21 . . . and DoD 5400.7-R . . . .*

32 C.F.R. § 250(2.1) (emphasis added). DoD Instruction 5200.21 is a general instruction governing dissemination of DoD Technical Information, and DoD 5400.7-R is the regulation governing the Department's FOIA Program. Id. Neither regulation includes the limitations on access to, or dissemination of, technical data included in Directive 5230.25.

Once the controlling DoD office determines that a technical data request contains critical technology,[1] and therefore is governed by Directive 5230.25, paragraph 5.4.3 directs that the information be released to "qualified U.S. contractors," unless:

> The technical data are being requested for a purpose other than to permit the requester to bid or perform on a contract with the Department of Defense or other U.S. Government Agency, in which case the controlling DoD office shall withhold such data if it has been determined by the DoD Component focal point . . . that the significance of such data for military purposes is such that release for purposes other than direct support of DoD-approved activities may jeopardize an important technological or military advantage of the United States.

Id. Thus, for commercial data services such as NAS that request information for further dissemination, rather than to bid on or perform a contract with the Government, technical data may be

---

[1] "Critical technology" is defined in DoDD 5230.25 as technologies that consist of:

> Arrays of design and manufacturing know-how (including technical data);
> Keystone manufacturing, inspection, and test equipment;
> Keystone materials; and
> Goods accompanied by sophisticated operation, application, or maintenance know-how that would make a significant contribution to the military potential of any country or combination of countries and that may prove detrimental to the security of the United States (also referred to as militarily critical technology).

32 C.F.R. § 250.3(c) (2008). The Directive establishes that the "controlling" DoD office for a given request determines, in that office's judgment, whether the data requested disclose critical technology with military or space application. § 250.5(b)(2). In making that determination, the DoD component is to use the Militarily Critical Technologies List (MCTL) as "general guidance." Id.

delayed or denied, despite the requester's status as a qualified U.S. contractor, if DoD determines that "release . . . may jeopardize an important technological or military advantage of the United States." Id.

Moreover, once received, the qualified U.S. contractor's ability to disseminate the information is limited to 1) foreign recipients approved, authorized, or licensed pursuant to Executive Order 12470; 2) another currently qualified U.S. contractor, "but only within the scope of the certified legitimate business purpose of such recipient"; and 3) the Departments of State and Commerce, the Congress, or any Federal, State, or local governmental agency for certain designated purposes.[2] Id. at 5.8.

**B. Procedural History**

In 2001, NAS made its first request, at the direction of Air Force personnel, for the Technical Orders at issue in this dispute through DoDD 5230.25. Am. Compl. ¶ 42. The Air Force denied NAS's request, citing the requirement in ¶ 5.4.3 of a solicitation or contract number for information that "may jeopardize an important technological or operational military advantage of the United States." Pl.'s Opp. at 4; Posey Decl. ¶ 10.

---

[2] Regardless of whether the information is released under the FOIA or under Directive 5230.25, it is subject to the limitations on dissemination imposed by applicable export control laws and regulations. See DoDD 5230.25 ¶ 3.2.3.

In 2003, NAS submitted three separate requests for the same information under FOIA, which went unanswered for over one year.[3] Pl.'s Opp. 4. In light of the Air Force's delay—which well exceeded the twenty-day statutory period provided for a response—NAS filed suit in this Court on September 23, 2004. Posey Decl. ¶ 17. One month after commencement of this action, the Air Force formally denied NAS's FOIA requests. Pl.'s Opp. Ex. 6. On November 20 and December 4, 2007, however, the Air Force released to NAS all 155 documents it seeks in this lawsuit, subject to the limitations of Directive 5230.25.[4] Def.'s Mot. to Dismiss 1-2.

In this Court's Order dated July 11, 2007, Defendant's Partial Motion to Dismiss Plaintiff's Complaint was granted, leaving only Plaintiff's FOIA claim. Mem. Op. to 7/11/2007 Order [Dkt. No. 37]. Among the dismissed counts was Count II, which alleged that agency records were improperly withheld under 10 U.S.C. § 130 as implemented by Defense Directive 5230.25, and Count V, which sought a declaratory judgment that AFI 61-204 is inconsistent with the FOIA and 10 U.S.C. § 130 as implemented by Defense Directive

---

[3] The request later designated number 03-360 was made on July 29, 2003, 03-365 on August 26, 2003, and 04-009 on September 4, 2003. Pl.'s 9/29/2009 Mem. 1 [Dkt. No. 72].

[4] The parties dispute whether these releases were made pursuant to the 2007 Scientific and Technical Information (STINFO) Pilot Program Agreement that the parties entered into as a part of settlement negotiations. See Def.'s Mot. to Dismiss n. 3; Pl.'s Opp. Ex. 7. The terms of that Agreement, however, have no bearing on this Court's analysis of whether Plaintiff has properly asserted a claim under the Freedom of Information Act.

5230.25. These counts were dismissed after this Court concluded that 10 U.S.C. § 130 did not create a private right of action, and therefore the Court lacked subject matter jurisdiction over the agency's action. Id.

In this action, NAS challenges the Air Force's denial of its 2003 FOIA request for 155 TOs.[5] As this Court concludes that the TOs are exempted from FOIA by 10 U.S.C. §130, Plaintiff's argument that the Air Force has misapplied DoDD 5230.25 is duplicative of the arguments made in opposition to the Government's Partial Motion to Dismiss. Those arguments have already been rejected.

## II.  STANDARD OF REVIEW

Defendant seeks to dismiss NAS's FOIA claim under Rules 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction to hear its case. See Jones v. Exec. Office of President, 167 F.Supp.2d 10, 13 (D.D.C. 2001). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of the factual allegations set forth in the Complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Wilbur

---

[5]Plaintiff seeks a release of the data under FOIA, a declaration that the Air Force's continued refusal to disclose technical data is contrary to FOIA and 10 U.S.C. § 1030, and attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E). Am. Compl. ¶ 57.

v. CIA, 273 F.Supp.2d 119, 122 (D.D.C. 2003)(citations and quotations omitted). The Court may consider matters outside the pleadings. See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). The Court may also rest its decision on the Court's own resolution of disputed facts. Id.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success . . . must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted).

## III. ANALYSIS

The Air Force argues for dismissal of NAS's FOIA claim on the ground that the requested material is not subject to general release under FOIA, but is instead subject to exemption under 10

U.S.C. § 130.[6] When faced with an Exemption 3 defense to a FOIA claim, district courts engage in the two-pronged inquiry identified in Irons & Sears v. Dann, 606 F.2d 1215, 1220 (D.C. Cir. 1979), cert. denied, 444 U.S. 1075 (1980). First, the Court must determine whether the statute qualifies as an Exemption 3 statute. Second, the Court must determine "whether the information sought after falls within the boundaries of the non-disclosure statute." Id.

Thus, the Air Force must establish that "the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." Larson v. Department of State, 565 F.3d 857, 864 (D.C. Cir. 2009) (citation omitted). As both parties have acknowledged in their filings, 10 U.S.C. § 130 is an established Exemption 3 statute. Colonial Trading Corp. v. Dep't of the Navy, 735 F.Supp. 429, 431 (D.D.C. 1990); Pl.'s Opp. 19. The parties disagree, however, on whether the Technical Orders fall within the statute's boundaries.

The first point of disagreement is whether the information has been publicly released. See Pl.'s Opp. 18. If so, exemption under 10 U.S.C. § 130 would be precluded. NAS claims that the Air Force previously released "substantially identical" information, because it had received prior versions of the same technical manuals. Id.; Pl.'s Reply 12. In response, the Air Force stresses the requirement

---

[6] Because this Court concludes that Plaintiff has failed to state a claim under FOIA, it is not necessary to reach Defendant's arguments on mootness and standing.

that the publicly released data be the "exact same" as the data requested in order to conclude that a document is not subject to withholding under § 130. Def.'s Reply 19 (citing Air Force Instruction 61-204, Ex. 3). The Air Force is correct that updated versions of the same manuals or orders constitute different information, even if "substantially identical," and as such are subject to withholding under 10 U.S.C. § 130.

The second point of disagreement is the agency's interpretation and application of Directive 5230.25, the implementing regulation that narrows the statutory exemption. Specifically, NAS contends that the information is not critical technology nor information the release of which may jeopardize an important U.S. technological or operational advantage, and therefore should be governed by DoD Instruction 5200.21 and DoD 5400.7-R. Compl. ¶ 31, 35.  The Air Force asserts that the 155 Technical Orders contain information "relate[d] to aircraft or aircraft components that fall within Category VIII of the United States Munitions List . . . [that] has also not been released pursuant to a general, unrestricted license and is not covered by any exemption in the export control regulations." Def.'s Mot. to Dismiss 7.

Plaintiff's FOIA claim does not give this Court jurisdiction over Department of Defense action that is governed, not by FOIA, but rather by DoD regulations promulgated pursuant to 10 U.S.C. §

130. As noted above, jurisdiction under FOIA extends only to the question of whether § 130 qualifies as an Exemption 3 statute, and whether the Technical Orders fall within the exemption's boundaries.

The analysis in <u>Assoc. of Retired Railroad Workers v. United States Railroad Retirement Bd.</u>, 830 F.2d 331 (D.C. Cir. 1987) is instructive. In that case, the Railroad Retirement Board denied a FOIA request pursuant to Section 12(d) of the Railroad Unemployment Insurance Act (RUIA), 45 U.S.C. § 351 <u>et seq</u>, which read:

> Information obtained by the Board in connection with the administration of this chapter shall not be revealed or open to inspection nor be published in any manner revealing an employer's identity: Provided, however, That . . . (ii) the Board may disclose such information in cases in which the Board finds that such disclosure is clearly in furtherance of the interest of the employee or his estate; . . . .

The Court of Appeals reviewed *de novo* and affirmed the District Court's finding that RUIA constituted an Exemption 3 statute under FOIA, and that the information would reveal an employer's identity. The Court declined, however, to review the agency's determination that disclosure was unwarranted under (ii). As the Court explained, the required scope of judicial review under FOIA is narrowed in cases where "the congressional intent to withhold is made manifest in the withholding statute itself." <u>Id.</u> at 336. In these cases, "the purpose of Exemption 3—to assure that Congress, not the agency, makes the basic nondisclosure decision—is met once [the exemption] is found to apply." <u>Id.</u>

Although the Court of Appeals emphasized that its holding was limited to RUIA, id. at 336-37, the rationale underlying the Court's decision is applicable to this case. Congress broadly exempted technical data with military or space application from FOIA in § 130(a), and in § 130(b) directed the Secretary of Defense to establish a separate regulatory framework to govern the data's disclosure "for use in performing United States Government contracts." 10 U.S.C. § 130(a), (b) (2008). To the extent that Plaintiff challenges the Air Force's interpretation of Directive 5230.25, it is asking for relief not provided for in 5 U.S.C. § 552(4)(b).[7] See also Davis v. United States Dept. of Justice, 968 F.2d 1276, 1280-81 (D.C. Cir. 1992) (noting that, absent a showing of public availability, items that fall within the ambit of a nondisclosure statute are categorically exempt); Fitzgibbon v. Central Intelligence Agency, 911 F.2d 755, 761-63 (D.C. 1990).

Because § 130(a) is, as noted above, a recognized Exemption 3 statute, the Air Force need only show that the information in question falls within its boundaries. The Air Force has submitted a Vaughn Index that briefly describes the equipment addressed in

---

[7] Section 4(b) of FOIA reads: "On complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant . . . [and] shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section . . . ." 5 U.S.C. § 552(4)(B) (2008).

each Technical Order. Def.'s Mot. to Dismiss, Ex. A. Further, the Air Force has stated that each Technical Order requested contains "technical data with military or space application" that "relate to aircraft or aircraft components that fall within Category VIII of the United States Munitions List; and contains information that has not been released pursuant to a general, unrestricted license, and is not covered by any exemption in the export control regulations." Over Decl. ¶¶ 2-7; Def.'s Stmt. of Material Facts as to Which There Is No Genuine Issue [Dkt. No. 54].

The United States Munitions List, codified at 22 C.F.R. § 121, compiles a list of defense articles and defense services pursuant to the Arms Export Control Act (22 U.S.C. 2778 and 2794(7)). 22 C.F.R. § 121.1(a) (2008). The Arms Export Control Act provides that the President "is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List." 22 U.S.C. § 2778(a)(1). Thus, describing an item as falling within Category VIII of the United States Munitions List is tantamount to a showing that the item "may not be exported lawfully outside the United States without an approval, authorization, or license under the . . . Arms Export Control Act." 10 U.S.C. § 130(a). See also Def.'s Vaughn Index, Mot. to Dismiss Ex. A.

Based on this analysis, the Court concludes that Defendant Air Force's showing is sufficient to establish that the information requested is exempt from FOIA under 10 U.S.C. § 130. Thus, Plaintiff's challenge to the Department's application of Directive 5230.25 does not constitute a claim under 5 U.S.C. § 552. To put it simply, Congress has exempted from FOIA coverage the 155 Technical Orders that NAS seeks, and therefore FOIA does not grant jurisdiction over Plaintiff's claim.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss under Rule 12(b)(1) is **granted.**  This is a final appealable Order subject to Federal Rule of Appellate Procedure 4. See Fed. R. App. P. 4. An Order will accompany this Memorandum Opinion.

October 7, 2009

/s/
Gladys Kessler
United States District Judge

Copies to: attorneys on record via ECF